# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DWAYNE STEVENS,**

        **Plaintiff,**

**v.**                                   **Civil Action No. 1:14cv206**
                                                     **(Judge Keeley)**

**UNITED STATES OF AMERICA;**
**A.R. PURDUE, Warden; MR. WEAVER,**
**Health Services Admin.; DR. EDDIE**
**ANDERSON; and BUREAU OF PRISONS,**

        **Defendant.**

## REPORT AND RECOMMENDATION

On December 1, 2014, the *pro se* plaintiff, an inmate then-incarcerated at FCI Gilmer[1] in Glenville, West Virginia, initiated this case by filing a complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, *et seq.*  The plaintiff was granted permission to proceed as a pauper on December 2, 2014, and paid his initial partial filing fee on December 29, 2014. On January 5, 2015, the plaintiff filed a motion for appointment of counsel with a memorandum of law in support, along with an amended complaint with a memorandum in support. The amended complaint was not on a court approved form, nor was it accompanied by a motion for leave to file an amended complaint.  On January 22, 2015, the plaintiff filed a Notice of Change of Address.   By Order entered on March 25, 2015, the plaintiff's motion for appointed counsel was denied.

---

[1] It appears that Plaintiff is no longer in prison.  Plaintiff filed a Notice of change of Address on January 22, 2015, indicating that he was now residing at an address  in Philadelphia, PA which appears to be a private home.  See Dkt.# 15. However, a check of the BOP's online Inmate Locator indicates that plaintiff was not released from custody until October 22, 2015. http://www.bop.gov/inmateloc/

This case is before the undersigned for review, Report and Recommendation pursuant to LR PL P 2.

## I. Factual Background[2]

On February 3, 1998, in the Eastern District of Pennsylvania, Plaintiff entered guilty pleas in Case No. 97-625-2 to Counts One and Two of a two-count indictment, charging him with Carjacking, in violation of 18 U.S.C. §2119 and Carrying a Firearm in Relation to a Violent Crime, in violation of 18 U.S.C. §924(c)(1). On May 18, 1999, in Case No. 2:99cr165-1, Plaintiff entered a guilty plea to one count of an Information charging him with Carjacking, in violation of 18 U.S.C. §2119. The two cases were consolidated for the purpose of an August 24, 1999 sentencing. Plaintiff received a 130 months sentence for the first the carjacking offense and a mandatory consecutive 120 months for using or carrying a firearm during the crime in Criminal Action No. 97-625-2, and in Criminal Action No. 2:99-165-1, he received another 120 month sentence for the second carjacking offense, based in part on a weapon enhancement under U.S.S.G. § lBl.3, to run consecutive with the sentence in Criminal Action No. 97-625-2, for a total term of imprisonment of 250 months, to be followed by three years supervised release. He filed an unsuccessful direct appeal and then an unsuccessful motion to vacate under 28 U.S.C. §2255 in Criminal Case No. 97-625-2 and an unsuccessful direct appeal in 2:99-165-1.

## II. The Pleadings

### A. The Complaint

According to the original Complaint filed in this matter, on or about June 15, 2012, while Plaintiff was incarcerated at FCI Gilmer, he injured his knee and ankle playing softball. Plaintiff asserts that the Defendant was deliberately indifferent to his medical needs because he was

---

[2] Information on Plaintiff's underlying criminal cases, E.D. Pa. Case No. 2:97cr625-2 and 2:99cr165-1, can be found on PACER.

subjected to "well over a one year delay" in receiving surgery to repair his injuries.  He contends that Medical Administrator Weaver ("Weaver") and Dr. Anderson ("Anderson") "intentionally maintained a practice of disregarding prisoner's medical needs as their [sic] is no medical staff available, nor medical intake twenty-four hours daily." (Dkt.# 1 at 6).  He further alleges that Weaver and Anderson are deliberately indifferent to the serious medical needs of FCI Gilmer inmates, because they intentionally delay providing medical treatment to inmates, in violation of their 8th Amendment rights. Further, he alleges that Anderson has "a practice of attempts to hood wink [sic] prisoners as an attempt not to pursue care of treatment, and intentionally delay outside hospital care." (Id. at 8).  Finally, he contends that the Defendant, Weaver, Anderson, and the BOP all acted with deliberate indifference to his 8th Amendment rights by delaying providing him with surgery for his injuries, contending that it took two years for him to be transferred to an outside facility to have the needed surgery.

As relief, plaintiff requests a jury trial; compensatory damages; punitive damages in the amount of $2,000,000.00; and attorney's fees. (Id. at 9).

**B. The Amended Complaint**

Plaintiff's amended complaint briefly cites to West Virginia negligence law (Dkt.# 12 at 1 – 2) before going on to reiterate his claims of deliberate indifference to his serious medical needs in violation of his 8th Amendment rights. In his "Statement of Facts," he alleges that he is suing because the United States and the BOP failed to train, supervise, and have in place "qualified . . . medical personnel to properly interpret x-rays[;]" and that the Defendant, the Warden, and BOP providers conspired to deprive him of his 8th Amendment rights, intentionally conspired to delay his medical care; deliberately ignored his repeated claims for medical treatment; and intentionally refused to approve him for outside care.  Plaintiff contends that

despite his many complaints of pain, he was forced to walk on his knee and ankle injuries, and that it was not until January 22, 2013 that he was finally taken to an outside medical facility to have an MRI done, only on the knee. (Id. at 12).  Plaintiff's sole claim for relief is predicated on deliberate indifference to medical needs.

In his memorandum in support, Plaintiff specifically denies that he is suing for medical malpractice and therefore, no screening certificate of merit is required.[3]  (Dkt.# 13 at 5).  He reiterates his 8th Amendment claims of deliberate indifference and alleges that Warden Perdue was part cause for the failure and . . . delay of Plaintiff no [sic] being transferred to the outside hospital after . . . [being] approved for . . . [the] operation." (Id. at 8).

Plaintiff contends he has exhausted his administrative remedies (Id. at 4); he attaches copies to prove this. (Dkt.#s 13-2; 13-3; 13-4; 13-5 at 1 – 3 and 6 – 9; 13-7; 13-8; 13-10; 13-11; 13-12; and 13-13). He also avers that he received his final denial letter on his Administrative Tort Claim and attaches a copy of it in support. (Dkt.# 13-5 at 4 – 5).

As relief, Plaintiff requests injunctive relief in the form of a declaration that the Defendant, the BOP, Weaver and Anderson's actions violated his 8th Amendment rights; compensatory damages of $2,200,000.00; punitive damages of $5,000,000.00; "perspective" damages for "any reoccurring injuries" in the amount of $3,000,000.00; attorney's fees, costs, investigative costs, hospital and doctors' fees; and a jury trial. (Dkt.# 12 at 11 - 12).

### III.   Standard of Review

Because at the time he filed his complaint, Plaintiff was a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is

---

[3] Among the many attachments to his memorandum in support of the amended complaint is a copy of a November 18, 2013 letter from Plaintiff to Joseph Snead M.D. of Weston Orthopedic Sports Medicine in Weston, West Virginia, requesting a "Certificate of Merit" regarding his knee injury.  See Dkt.# 13-9 at 3.  Plaintiff does not attach any response from Dr. Snead.

frivolous or malicious.  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  However, the Court must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).   A complaint which fails to state a claim under Fed. R. Civ. P. 12(b)(6) is not automatically frivolous.  See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless."  Denton v. Hernandez, 504 U.S. 25, 32 (1992).  This includes claims in which the plaintiff has little or no chance of success.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## IV. Analysis

### A) Federal Tort Claim Act

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme through which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States.  The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA.  Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code.  28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

---

[1] Id. at 327.

Pursuant to the FTCA, the United State is liable in the same manner and to the same extent as a private individual under like circumstances in accordance with the law of the place where the act or omission occurred.  28 U.S.C. §§ 2674 and 1346(b)(1); <u>Medina v. United States</u>, 259 F.23d 220, 223 (4th Cir. 2001).  In West Virginia, in every action for damages resulting from injuries to the plaintiff alleged to have been inflicted by the negligence of the defendant, the plaintiff must   establish three elements: (1) a duty which the defendant owes to him; (2) a negligent breach of that duty; and (3) injuries received thereby, resulting proximately from the breach of that duty.   <u>Webb v. Brown & Williamson Tobacco Co</u>., 2  S.E.2d898, 899 (W.Va. 1939).

In his Amended Complaint, Plaintiff makes claims under the FTCA for injunctive relief, punitive damages, and a jury trial. First, the undersigned notes that in a FTCA action, relief is limited to money damages; equitable relief is not available under the FTCA. <u>Peck v. Blessing</u>, 2006 WL 213736 (N.D. Cal.); <u>Ajaj v. United States</u>, 479 F. Supp.2d 501 (D.S.C. 2007).  As for Plaintiff's claim for punitive damages, the undersigned notes that 28 U.S.C. § 2674 provides as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a  private         individual under like circumstances, **but shall not be liable for interest prior to judgment or for punitive damages.**

28 U.S.C. § 2674 (emphasis added). Because this Court does not have the authority to entertain Plaintiff's demand for punitive damages, the Plaintiff's claim for the same has no chance for success. Finally, as for Plaintiff's request for a jury trial, pursuant to 28 U.S.C. § 2402, "any action under § 1346, shall be tried by the court without a jury." The only exception to this mandate is for claims concerning federal tax collection. Because Plaintiff's claims against the

United States under § 1346 do not fall within the exception to § 2402, he is not entitled to a trial by jury.

Finally, Plaintiff has not alleged any negligence against the United States; to the contrary, he specifically denies he is suing for medical malpractice and only raises claims of constitutional violations and intentional acts.  Each of those claims will be addressed in turn.

**B) <u>Constitutional Violations</u>**

Plaintiff's claims of deliberate indifference to his serious medical needs states a constitutional claim of violation of his Eighth Amendment rights.

A claim of deliberate indifference to a plaintiff's serious medical needs in violation of his Eighth Amendment rights is not actionable against the United States in a Federal Tort Claims Act (FTCA), 28 USC §2671 *et seq.* action. A constitutional tort is not cognizable under the FTCA.  <u>Royster v. United States</u>, 2008 U.S. Dist. LEXIS 106634 *13 (W.D. Pa. December 1, 2008).

Accordingly, this claim must be dismissed for failure to state a claim upon which relief can be granted.

**C) <u>Intentional Acts</u>**

The United States enjoys sovereign immunity except to the extent that Congress has waived it by enacting the Federal Tort Claims Act, 28 U.S.C. §§2671, *et seq.* The FTCA provides at §2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. §1346(b)(1) and (2) provide as follows:

(b)(1) [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

(2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or any agency, officer, or employee of the Government for mental or emotional injury suffered while in custody without a prior showing of a physical injury.

Generally speaking, therefore, the FTCA confers subject matter jurisdiction to the District Courts over negligence actions against the United States. In order to maintain a case against the United States under the FTCA, the plaintiff must demonstrate that his action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under law of the state in which the action accrued. Under West Virginia law, which applies under the FTCA, the plaintiff in a negligence action bears the burden of proof by a preponderance of the evidence to demonstrate the applicable standard of care, deviation from that standard and a causal connection between the deviation and plaintiff's injury. See Judy v. Grant County Health Dep't., 210 W.Va. 286, 291 - 92, 557 S.E.2d 340, 345 - 46 (2001).

However, the waiver of the federal government's sovereign immunity through the FTCA with respect to negligence claims is not absolute. Congress specified a number of exceptions limiting the waiver in 28 U.S.C. §2680 including the discretionary function exception and the intentional tort exception, spelled out at subsections (a) and (h) of that statute as follows:

The provisions of this chapter and section 1346(b) of this title shall not apply to –

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a

federal agency or an employee of the Government, whether or not the discretion involved be abused.

* * *

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For purposes of this subsection, 'investigative or law enforcement officers' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

If an exception set forth in 28 U.S.C. § 2680 applies in an action, the United States has sovereign immunity, and the District Court has no subject matter jurisdiction. See Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998).

A District Court considering whether the discretionary function exception bars an FTCA claim must determine whether: (1) the action taken involves choice by the acting government employee or a specific course was mandated by statute, regulation or policy; and (2) the choice is "of the kind that the discretionary function was designed to shield." Berkowitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531 (1988). When established policy allows a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." United States v. Gaubert, 499 U.S. 315, 324, 111 S.Ct. 1267, 1274, 113 L.Ed.2d 335 (1991). "'[I]t is the nature of the conduct rather than the status of the actor' that governs whether the exception applies." Gaubert, 499 U.S. at 323, *quoting* Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

9

Under the FTCA's intentional tort exception, the United States is not liable for the intentional torts of its employees unless committed by investigative law enforcement officers of the United States. Correctional officers qualify as "law enforcement officers" as defined in Section 2680(h). See Ortiz v. Pearson, 88 F.Supp.2d 151, 164 (S.D.N.Y. 2000). Under the facts of this case, this exception is inapplicable.

Here, the plaintiff asserts that all of the acts of the Defendant, the Warden, the BOP, and the BOP's medical providers were willful and knowing violations of his constitutional rights. The plaintiff states no cause of action with respect to any negligent acts on the part of the Defendants.  Thus, the plaintiff's tort claims fail and must be dismissed.  See FDIC v. Meyer, 114 S.C.t 996 (1994) (constitutional torts are not cognizable under the FTCA).

**D) <u>Medical Negligence</u>**

To establish a medical negligence claim in West Virginia, the plaintiff must prove that: (a) the health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death. W.Va. Code §55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated, and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required.  Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-06 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued.  W.Va. Code §55-7B-6.   This section provides in pertinent part:

**§55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against  any health care provider without complying with the provisions of this section.
>
> (b) *At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim* on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, *together with a screening certificate of merit*. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

W.Va. Code §55-7B-6 (emphasis added).

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D. W.Va. 2004).[4]

Here, the Plaintiff specifically and emphatically avers that he is *not* suing the Defendant USA or its medical providers for medical malpractice. Therefore, he argues, no screening certificate is necessary to support his claim that treatment of his knee and ankle injuries was unreasonably delayed.

Setting aside for the moment that there appears to be little support in the admittedly limited record for plaintiff's claims that the FCI Gilmer medical staff deliberately ignored his

---

[4] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

requests for medical attention while he incarcerated there,[5] with regard to the appropriate standard of care, the plaintiff has completely failed to sustain his burden of proof.  Plaintiff does not even attempt to assert, much less establish, the standard of care for the diagnosis or treatment of his ankle and knee injuries. Under the circumstances of this FTCA case, Plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the Defendant's breach of the duty of care. Moreover, to the extent the Plaintiff's medical negligence claims arise in West Virginia, there is nothing in either the original or amended complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6.  Accordingly, here again, the plaintiff has failed to state a claim upon which relief can be granted.

## V.   <u>Recommendation</u>

In consideration of the foregoing, it is the undersigned's recommendation that the Plaintiff's complaint under the FTCA be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted.

---

[5] It appears from the responses to Plaintiff's Administrative Tort Claim and administrative remedies that Plaintiff did in fact receive medical care on the day of injury and frequently thereafter. On the day of injury, his initial complaint was the knee injury; an exam revealed full range of motion and mild swelling.  He was advised to apply ice and take Motrin and Tylenol for pain and swelling, and to return to health services if his symptoms worsened. A June 18, 2012 knee x-ray only revealed degenerate patellar changes.  Plaintiff apparently returned to health services on June 25, 2012, complaining of ankle and knee pain. He had been using crutches and avoiding bearing weight on the knee, and reported improvement with less pain. An exam revealed mild effusion, no instability, and full range of motion in the knee. Plaintiff returned to health services' Chronic Care Clinic on July 10, 2012, reporting still having some swelling in the right knee.  A small effusion was noted; he was instructed to rest and ice it, continue compression and elevate it. He returned on July 23, 2012, complaining of continued ankle and knee pain, and requested an MRI.  He was given steroids; directed not to run, but to continue to ice and rest the injury. He was wearing a compression brace. On September 5, 2012, follow-up x-rays were obtained which apparently erroneously showed an avulsion fracture of the right ankle; the knee showed a joint effusion. Plaintiff was given a splint for his ankle, instructed to avoid weight-bearing, and referred to an outside orthopedist. Plaintiff was seen by an orthopedic specialist on September 18, 2012. The orthopedist performed his own knee and ankle x-rays, which found no evidence of an ankle fracture; he recommended an MRI of the knee with no other treatment till the MRI results were obtained. The MRI was performed in January 2013; it revealed a tear in the meniscus. Plaintiff was seen by the orthopedist in follow up and arthroscopic repair of the knee was recommended. It was completed on December 31, 2013.  <u>See</u> Dkt.# 13-5 at 4 – 5; Dkt.# 13-4 at 2; and Dkt.# 13-5 at 2.

The Clerk is directed to correct the docket to reflect that the United States is the only proper defendant.[6]

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, **or by March 22, 2016**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: March 8, 2016

　/s/  James E. Seibert＿＿＿＿＿＿＿＿＿＿＿＿
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE

---

[6] The only proper party defendant in an FTCA action is the United States, not the Warden, the BOP's medical providers, or the Bureau of Prisons. See 28 U.S.C. § 2679 (b) and (d)(1). Thus, no federal agencies or individual employees of the BOP can be included in Plaintiff's FTCA action, and only the United States can be named as Defendant with respect to the FTCA action.